UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE: )
)
GLENVIEW HEALTH CARE )
    FACILITY, INC. )   CASE NO. 19-10795(1)(11)
)
                       Debtor )

## MEMORANDUM-OPINION

This matter is before the Court on the Application of the Unsecured Creditors' Committee ("UCC") to Retain and Employ Bingham Greenebaum Doll, LLP ("BGD") as counsel for the UCC (hereinafter referred to as the "Application"). The Court considered the Application filed by the UCC, the Objection to the Application filed by Debtor Glenview Health Care Facility, Inc. ("Debtor"), the Reply to the Objection filed by BGD as counsel for the UCC and the comments of counsel for the parties at the hearing held on the matter. For the following reasons, the Court will deny the Application.

## PROCEDURAL AND FACTUAL BACKGROUND

On August 1, 2019, the Debtor filed its Voluntary Petition seeking relief under Chapter 11 of the United States Bankruptcy Code.

On September 25, 2019, the UCC filed the Application seeking an Order authorizing it to retain and employ BGD as its counsel pursuant to 11 U.S.C. §§ 327, 328(a) and 1103(a), as well as Rule 2014(a) of the Federal Rules of Bankruptcy Procedure.

In the Application, BGD stated that the services to be provided to the UCC include the following,

. . . . .

    (c) Negotiating on behalf of the Committee with the Debtor, its secured creditors, and other parties-in-interest in connection with Debtor's use of cash collateral and the Debtor's exit strategy from Chapter 11, including but not limited to a sale or a plan of reorganization.

(Application at p.4).

    In disclosing any conflicts of interest, BGD states in its Application:

. . . . .

    **<u>Disclosure Concerning Conflicts of Interest</u>**.

    13. In reliance on the Irving Declaration, the Committee believes that, except as set forth in the Irving Declaration: (a) BGD has no connection with the Debtor . . .

(Application at p. 6).

    In the Irving Declaration filed with the Application, BGD states:

. . . . .

    d. BGD has previously represented Lisa Howlett in estate planning matters which pre-date and are unrelated to the Chapter 11 case. BGD's representation of Ms. Howlett concluded in 2017. Out of an abundance of caution, the professionals who represented Ms. Howlett will not represent the Committee.

(Ex. A to Application at p. 3).

    On October 16, 2019, the Debtor filed an Objection to BGD's Application. In that Objection, the Debtor states that although BGD said its representation of Lisa Howlett in 2016 was for estate planning and tax advice, actually BGD represented Lisa Howlett in 2016 in regards to a Buy-Sell Agreement of Glenview Health Care Facility, Inc., the Debtor herein. BGD assisted Debtor and Lisa Howlett with preparation of a Buy-Sell Agreement for the purchase and sale of the Debtor and all of its assets. (Objection of Debtor at ¶3).

On November 5, 2019, BGD filed a Reply to the Debtor's Objection stating that the exhibits to Debtor's Objection show that BGD represented Ms. Howlett and as part of her succession planning, she consulted with BGD on a Buy-Sell Agreement with regard to the Debtor between April and June 2016. No Buy-Sell Agreement was ever consummated and BGD states that Ms. Howlett still maintains her 50% interest in the Debtor. BGD contends that the prior employment was unrelated to the Debtor's current bankruptcy case and the prior representation does not present an actual conflict of interest. (Reply at ¶7-9).

## **LEGAL ANALYSIS**

The UCC is permitted, pursuant to 11 U.S.C. § 1103(a), with court approval, to authorize the employment of attorneys and other professionals to represent the UCC. However, § 1103(b), prohibits the employment of an attorney to represent the committee, if while employed by the committee, it represents any other entity having an adverse interest in connection with the case. While an attorney retained by a creditor's committee may represent others with parallel interests, such representation is prohibited if there is an actual conflict of interest. *Matter of Oliver's Stores, Inc.*, 79 B.R. 588, 593 (Bankr. D. New Jersey 1987). Here, the alleged conflicting representation occurred three years prior to the initiation of the case currently before the Court.

11 U.S.C. § 327, which governs the employment of professionals, provides that the trustee, with the court's approval, "may employ one or more attorneys. . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons to assist the trustee in carrying out the trustee's duties under this title." An "interest adverse to the estate," as used in the Code is the same as an "actual conflict of interest," pursuant to Section 327(c). *In re Midway Motors Sales, Inc.*, 355 B.R. 26, 33 (Bankr. N.D. Ohio 2006). While the burden of proof

in seeking disqualification of opposing counsel is on the party seeking disqualification, a professional seeking appointment under § 327 bears the initial burden of proof that they meet all qualifications of the statute in order to obtain the appointment.

The term "actual conflict" is not defined in the Bankruptcy Code, but courts have generally applied a factual analysis to determine whether an actual conflict of interest exists. *In re Bullitt Utilities, Inc.*, 558 B.R. 181 (Bankr. W.D. Ky. 2016). Courts look to whether there is an "active competition between two interests, in which one interest can only be served at the expense of the other." *In re M & P Collections, Inc.*, 599 B.R. at 7, 11 (citing *In re BH&P, Inc.*, 103 B.R. 556, 563 (Bankr. D. N.J. 1989, *aff'd* in pertinent part, 119 B.R. 35 (D. N.J. 1990).

The standards by which federal courts measure an attorney's professional conduct are standards that are defined by federal law. *Carlsen v. Thomas*, 159 F.R.D. 661, 663 (E.D. Ky. 1994). Attorneys in this district must follow the Standards of Professional Conduct as adopted by the Kentucky Supreme Court. *Harper v. Everson*, No. 3:15-CV-575, 2016 WL 9149652 (W.D. Ky. May 5, 2016).

Kentucky Rule of Professional Conduct 1.9 governs disqualification and discusses duties to former clients. In relevant part it states,

> (a). A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Here, the client does not consent and objects to the representation.

In *Dana Corp. v. Blue Cross Blue Shield Mutual*, 900 F.2d 882, 889 (6th Cir. 1990), the court set forth a three part test for disqualifying counsel that tracks Rule 1.9. That three part test provides that an attorney shall be disqualified only if the court finds: (1) a past attorney-client

relationship existed between the parties seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. *Id.* at 889.

Here it is clear that an attorney-client relationship previously existed between Ms. Howlett, an insider of the Debtor, and BGD. In determining the second part of the test, whether the subject matter was "substantially related," the Sixth Circuit has stated, "the court must look to the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the non-adverse client." *Bowers v. Opthalmology Grp.*, 733 F.3d 647, 651 (6th Cir. 2013). The issue then becomes whether any confidential information was obtained during that relationship.

In *Encore Energy, Inc v. Morris Kentucky Wells LLC*, 2019 WL 2011062 (W. D. Ky. 2019), the court considered a motion to disqualify a law firm that had previously represented the opposing party. In determining whether the matters were substantially related, the court looked to Ky. S. Ct. R. 3.130(1.9 cmt. 3) which states, "matters are substantially related . . . if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information as would have normally been obtained in the proper representation would materially advance the client's position in the subsequent matter." There is no need of a commonality of legal claims or issues. The court must determine the type of information that the potentially conflicted attorney would have been exposed to in a normal or typical representation of the type that occurred with the now adverse client." *Id.* at 2, citing *Bowers v. Ophthalmology Group*, 733 F.3d 647, 652 (6th Cir. 2013). The court must reconstruct the attorney's representation of the former client to infer

what confidential information could have been imparted in that representation and decide whether that information has any relevance to the attorney's representation of the current client. *Id.*

As in *Encore*, the issue here is not whether we are dealing with the same transaction but whether there is a substantial risk that confidential factual information was obtained by BGD in its prior representation of an insider of the Debtor. In BGD's Application, it sets forth the services it will provide to the UCC and specifically indicates that it will include, "Debtor's exit strategy from Chapter 11, including but not limited to a sale or a plan of reorganization." BGD's prior representation of Ms. Howlett concerned a Buy-Sell Agreement related to the Debtor. The attorneys from BGD that worked on that matter had to discuss and use information about Debtor and its assets and business practices to construct a Buy-Sell Agreement. The Court has every reason to believe that BGD acquired confidential information about Debtor's business in the prior representation and this is the reason Debtor has objected. Such information would be related to the confirmation issues that typically involve detailed and proprietary information of Debtor. In weighing the equities, the objecting and vulnerable Debtor has the better position.

Furthermore, BGD's assertion that the attorneys who worked for Ms. Howlett previously have either left BGD or will not work on this matter does not resolve the conflict. Even if the current members of BGD who are still employed by BGD who represented Ms. Howlett, agree not to discuss their prior representation of Ms. Howlett with those members of BGD working for the UCC, this does not cure the conflict. The rule of imputed disqualification charges lawyers with the conflicts of their colleagues within a firm. The imputation rule presumes that confidential information about clients is shared or generally available to all lawyers in a firm. Ky. Sup. Ct. R. 3.130 (1.10) Cmt. 2. The purpose of the rule is to protect the client who has chosen a law firm to

represent her.  The client is entitled to the same duties of loyalty and confidentiality from every lawyer in the firm.  *Harper v. Everson*, 2016 WL 9149652 (W.D. Ky. 2016).  BGD had a confidential relationship with an insider of the Debtor about her ownership of the Debtor.  The screening procedures proposed by BGD with respect to its attorneys who formerly represented Mr. Howlett are insufficient to overcome this presumption of shared confidences.

Here, the Court does not find that BGD's representation of one of the Debtor's insiders on a Buy-Sell Agreement which involved the Debtor's assets and shares of stocks is an unrelated matter.  Indeed, the goal of the Chapter 11 Debtor is reorganization and confirmation of a new business plan using the same or substantially similar assets, with the same management and funding a new enforceable contract with its creditors.  One could reasonably argue it is not so different than what BGD tried to accomplish in 2016.  For these reasons, the Court must deny the Motion of BGD.

## CONCLUSION

For all of these reasons, the Court must **DENY** the Application of BGD to be employed as counsel for the Unsecured Creditors' Committee.  An Order incorporating the findings herein accompanies this Memorandum-Opinion.

_____
Joan A. Lloyd
United States Bankruptcy Judge
Dated: December 17, 2019

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE: )
)
GLENVIEW HEALTH CARE )
    FACILITY, INC. ) CASE NO. 19-10795(1)(11)
)
Debtor )

## ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Application to Employ Bingham Greenebaum Doll, LLP as counsel for the Unsecured Creditors' Committee, be and hereby is, **DENIED**.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: December 17, 2019